IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cr. No. 21-00524 MLG |
| ) | |
| **LUIS MARISCAL-LOPEZ**, ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States respectfully submits this Sentencing Memorandum in preparation for Defendant Mariscal-Lopez's sentencing hearing on June 20, 2024. The Court accepted the plea agreement negotiated by the parties on November 1, 2023. (Doc. 344). The United States expects members of the victim's family to address the Court at sentencing, and the United States has conferred with the victim's family pursuant to 18 U.S.C. § 3771(a)(5). The United States requests that the Court sentence Defendant Luis Mariscal-Lopez to 17 years of incarceration, consecutive to his convictions in state court in New Mexico case numbers D-101-CR-2019-0028 and D-101-CR-2019-0047, and then to 5 years of supervised release. The United States submits that this is an appropriate resolution considering the circumstances of the case and the relevant sentencing factors. As grounds, the United States provides as follows:

**PROCEDURAL HISTORY**

The Grand Jury indicted Defendant Luis Mariscal-Lopez (hereinafter Defendant), and co-Defendant Jorge Dominguez, on April 14, 2021, in a two-count indictment for Conspiracy to Commit Kidnapping pursuant to 18 U.S.C. § 1201(c) and Kidnapping Resulting in Death, Aiding and Abetting pursuant to 18 U.S.C. §§ 2 and 1201(a)(1) for an offense occurring on January 14,

2018 and continuing to January 15, 2018. (Doc. 2). The United States filed a Writ of Habeas Corpus Ad Prosequendum to detain Defendant during the prosecution of this matter on July 14, 2021. (Doc. 29). Law enforcement brought Defendant into federal custody and arraigned Defendant on August 11, 2021. (Doc. 33). Defendant waived a detention hearing. (Doc. 37). The United States provided notice of its intent to not seek the death penalty in this matter on August 25, 2021. (Doc. 42). The parties then commenced extensive litigation in this case.

The co-Defendant pleaded guilty on October 14, 2022. (Doc. 164). The parties prepared to go to trial on November 6, 2023 (Doc. 292), but Defendant pleaded guilty on November 1, 2023. (Doc. 343). The Court accepted the plea agreement at the hearing, and pursuant to Rule 11(c)(1)(C) it contains an agreement for Defendant to be sentenced to 17 years of incarceration, with all other conditions left to the discretion of the Court. (Docs. 343 and 344).

On December 21, 2023, the United States Probation Office filed a Presentence Investigation Report (PSR). (Doc. 346). Therein, the PSR calculated the total offense level at 42. *Id.* at ¶ 51. As for Defendant's criminal history category, probation identified three state felony convictions in New Mexico, totaling a criminal history score of 7 for a criminal history category of IV. *Id.* at ¶¶ 57-58. Defendant's guideline range of imprisonment is 360 months to life. *Id.* at ¶ 81. On March 5, 2024, Defendant filed his sentencing memorandum, where he did not object to the guideline calculation and requested the Court continue to accept the agreement of a 17 year sentence. (Doc. 357). Upon Defendant's request, the Court reset the sentencing hearing to June 20, 2024. (Doc. 356).

## FACTUAL HISTORY

Several co-conspirators, including co-Defendant Jorge Dominguez and Defendant Luis Mariscal-Lopez, as well as unindicted co-conspirators Crystal Ramos (deceased), J.T. (juvenile

at the time of offense) and Johnny Black, who took part in the conspiracy and pleaded guilty to being an accessory after the fact, collaborated to kidnap and kill Jane Doe. Jane Doe used Ramos's debit card to withdraw $400 without her permission and did not repay it. This upset Ramos who then plotted to kill whoever did it, and enlisted the co-conspirators to assist her. The conspirators planned to lure Jane Doe into the home at 302 McKracken Lane, in Espanola, N.M., and then torture her.

Ramos and J.T. communicated with Jane Doe over Facebook Messenger. They planned to meet her at Buffalo Thunder Resort and Casino, and then they brought her back to the house on McKracken, ostensibly to hang out and use drugs. However, once she arrived, Ramos, J.T., and the defendants assaulted her. They kicked, punched, and used dangerous weapons to strike her. They drug Jane Doe to a back room they covered in plastic to prevent blood stains on the wall and floor, and began to torture her. They tied her to a chair and continued to strike her with various objects, including the butt of a long gun or shotgun. Ramos also used a drill to torture the victim. Jane Doe died as a result of the abuse.

The same group of individuals, along with Johnny Black, then cleaned up the house and hid the body. In the next several days, they, including Defendant, took the body to a remote location near Velarde, N.M., and burned the body and evidence in two fire pits. At some point, possibly due to seeing helicopters in the area, they smothered the fire and collected much of Jane Doe's remains. They placed Jane Doe's remains in a large toolbox, and later they poured cement or concrete over her remains. Weeks later, Johnny Black, and likely a co-conspirator, took the toolbox with the remains to a location near Ojo Caliente, N.M.. There they buried the toolbox in a shallow grave near the river. Additional details are described in the PSR. (Doc. 346 ¶¶ 9-34). As part of Black's plea agreement, he provided information leading to law enforcement finding

the remains. Forensic evidence collected at the burn site identified Defendant as participating in the attempts to burn the remains and other evidence.

## ARGUMENT

Although the Sentencing Guidelines range in this matter comes out to 360 months to life, there is sufficient justification to sentence Defendant to 17 years in the Bureau of Prisons. This case was complicated, and relied heavily on witnesses' testimony who were either co-conspirators and/or intoxicated on illicit substances at the time. Additionally, Defendant was not the most culpable of all the co-conspirators; he appeared to be a tertiary participant who primarily participated in carrying out the violence and disposing the body. Defendant still has time to serve on his state sentence and will not enter federal custody for several more years. A sentence of 17 years is sufficient but not greater than necessary and is appropriate under the factors enumerated by 18 U.S.C. § 3553(a).

The Court must consider the United States Sentencing Guidelines (USSG) and the 18 U.S.C. § 3553(a) factors in determining a sentence that is sufficient but not greater than necessary to achieve the statutory purposes of federal sentencing. *See United States v. Booker*, 543 U.S. 220 (2005). Among other considerations, these factors consider the nature of the offense, the defendant's history, seriousness of the charge, and the applicable guideline range. 18 U.S.C. § 3553(a).

Based on Defendant's actions prior, during, and subsequent to the crimes charged, Defendant should receive a sentence of 17 years of incarceration. To be sure, after considering the factors, a district court may apply a variance if it ensures "the justification is sufficiently compelling to support the degree of the variance." *Gall v. United States*, 552 U.S. 38, 50 (2007). A "major" variance should have "a more significant justification than a minor one." *Id*.

Nevertheless, there is no "appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range" and "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id*. at 47.

### A. Nature, circumstances and seriousness of the offense

Defendant's acts show a danger to the community. He participated in a violent and abhorrent murder orchestrated by others, and helped dispose of the body of Jane Doe in manner that made her unlikely to ever be found. However, 17 years of incarceration is sufficient without being greater than necessary to achieve the goals of federal sentencing. As noted at the plea hearing, the physical evidence directly tying Defendant to crime was his DNA on a cigarette butt found at the burn site. The government would have needed to rely on impeachable witnesses in a complicated trial to connect him to the kidnapping and killing of Jane Doe. This conviction brings a surety as to the outcome and closure to a family that has grieved many losses since the death of Jane Doe. The family expressed relief that this ordeal can be put to rest, and after 6 years of concern, they can get some sense of justice for the loss of their loved one.

Defendant and the other co-conspirators actions were heinous. But nothing can be done to bring Jane Doe back, and much of the disturbing behavior took place after Jane Doe had passed away. The most culpable party, Crystal Ramos, died in a shoot out with police in Colorado. Her daughter, arguably the second most culpable, was a minor at the time of the offense. Defendant operated as muscle for the crime, but did not appear to be intimately involved in the scheming or planning for the kidnapping or killing of the victim.

Defendant's culpability is most similar to co-Defendant Jorge Dominguez and Johnny Black. Johnny Black received a total sentence of 171 moths, but only 87 months was attributable

5

to his actions in this case as an accessory after the fact. At the time of his plea, it was unknown the extent of his role that he had in the planning, and he provided information used in locating the victim's remains. The other 84 months were attributed to shooting at a law enforcement officer within tribal lands. Co-defendant Jorge Dominguez faces a similar sentence to Defendant and is pending sentencing. For this case, Defendant's sentence is in line with those on his tier of culpability.

### B. Defendant's past conduct and history

Defendant's repeated criminal behavior demonstrates the need for a lengthy term of incarceration of 17 years. This will enable Defendant to do the Residential Drug Abuse Programming (RDAP). His history of substance abuse and other crimes also suggests the need to have him serve five years on supervised release to aid with his reentry into society and help with his rehabilitation. Defendant is expected to complete his state sentence in March of 2027, so his 17 year sentence in this matter would not start until then, as his credit for the time he has been incarcerated while this case has been pending should be attributable to the state convictions.

### CONCLUSION

For the reasons described above, the United States respectfully requests that the Court sentence the Defendant to 17 years of incarceration to be followed by five years of supervised release.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*Electronically filed 04/04/2024*
NICHOLAS J. MARSHALL
CAITLIN DILLON
Assistant United States Attorneys
201 3rd Street NW, Suite 900
Albuquerque, New Mexico 87102
(505) 224-1517

I HEREBY CERTIFY that I electronically filed
the foregoing with the Clerk of the Court
using the CM/ECF system, which will send
notification to defense counsel and probation.

 /s/
NICHOLAS J. MARSHALL
Assistant United States Attorney

7